Turney, J.,
delivered the opinion of the Court.
The judgment of the Circuit Court is erroneous. The action is trover, begun by the plaintiff against the defendants for the conversion by their respective intestates in their lifetimes of two mules,' the property of the plaintiff. The declaration shows the death of intestates anterior to the commencement of the suit. To the declaration there are pleas of not guilty, and that the alleged trespassers were dead at the commencement of the suit. To the second plea is a demurrer, assigning for cause, 1st, “ That the facts contained in said plea were well known *to defendants and their attorneys when they filed their first plea, and if material, should have been then pleaded.” 2d, “ That the death of Martin Hardin and W. E,. Porter, after taking and converting said property to their own use, is no reason why their estates are not legally liable for the same.” 3d, “ Said plea is in effect a demurrer.” A trial was had upon the plea of not guilty — verdict and judgment for the plaintiff, and an appeal in error to this Court. The demurrer was sustained. The pleadings are irregular — the declaration contains no maintainable cause of action, and should have been demurred to, or stricken from the files on motion. *201 Tbe pleas to tbe declaration tendered an immaterial issue, and bence did not cure any error or defect in tbe declaration. An action of trover cannot be commenced and • maintained against an executor or administrator. Tbe act of 17tb February, 1836, c. 77, transferred to tbe Code, section 2846, was not intended to authorize tbe institution of actions ex delicto against tbe representatives of deceased persons, but was simply meant to warrant a revivor against a personal representative, tbe suit having been commenced against tbe wrong doer in bis lifetime; tbe terms of the acts are too plain to allow of doubt as to their meaning. It is insisted that by tbe case of Kimbro v. Mitchell, 1 Head, 540, tbe common law maxim, that “A personal right of action dies with tbe person,” is no longer applicable in this State. Although such is tbe exact language of Judge McKinney in that case, we cannot concur in tbe general broad construction given to it in argument here. There tbe learned Judge was discussing alone tbe doctrine of revivor as suggested by our statutes, and presented in that case, and did not mean to be understood as applying tbe language used, to all cases. While, in some sense, practically, when a cause is properly brought before tbe courts, tbe maxim already quoted does not always obtain in Tennessee, being modified by 'our legislation, yet to avoid its application, regard must be had to 'the character of tbe action.
It is a principal of tbe common law that when an action arises ex delicto, and tbe declaration im- *202 pufes a tort clone either to tbe person, or property of another, and tbe person by whom the injury was committed dies, no action for such injury can be brought against bis executor .or administrator. In tbe case of Griffith v. Beasley, 10 Yer., 437, Judge Green, in commenting upon tbe common law principle just quoted, says: “This defect of tbe common law was remedied by statutes 30 Charles 2, c. 7, and 4 and 5 W. & M., c. 2, s. 12. But these statutes are not in force in Tennessee, there being no evidence that they were ever in force and use in North Carolina. The common law principle above stated must be considered as existing in full vigor unless it has been changed by some statute of our own. This, we think, has not been done.” The case cited becomes more important to a right conclusion in the case before us when we remember it was made immediately after the passage of the Act of 1836, already referred to as transferred to the Code. So it must follow that the common law maxim, u actio personalis moritur cum persona,” applies in this instance — the only modifications being the statutory one, and the rule of practice that a party injured may waive the tort and sue in an action ex contructo. It is insisted that sec. 2747 of the Code, which provides that “all wrongs and injuries to the property and person in which money is demanded as damages may be redressed by an action on the facts of the case,” authorizes this form of action here. "We do not think so. Ve construe that statute to mean that *203 tbe profusion of expression with little substance might be omitted; tbat matter, without multiplicity of words, is all that is to be required in notifying an adversary of what he is to answer or defend. Certainly it could not have been intended that a naked recital of facts, without more, should be sufficient to entitle a plaintiff to introduce proof, and proceed to verdict and judgment. If so, any informal and incoherent history, without address to any court, averment of debt, or damages, or of complaint, and without conclusions, is ■ sufficient. Already there is too great inclination to construe the Code into an abolition of pleading, and in consequence, an abominably loose system is growing up, which, unless checked, will convert the law from a science into a lottery. More than forty years ago Judge Green, one of the builders of the jurisprudence of this State, in delivering an opinion in this city, said: “ The science of good pleading should be cultivated by all who desire to excel in the profession. The design is to simplify and make clear the very point to be settled. It is the foundation upon which every cause is to rest, and contains within itself the soundest logic. From the “black-lettered” age to the present period, the most admired of our judicial writers have recommended to the student a close attention to special pleading. If the comparision may be permitted, it is to our profession what lines and angles are to geometry, and either we must call ourselves back to this main point, from which we are departing, *204 or lose sight of law as a science. "While the bar is thus admonished, inferior jurisdictions will find it important in cases before them to see that issues are so taken that the proceedings may be sensible, and thereby the means of doing justice be more certainly attained.” 1 Yer., 390, 393.
We commend this advice to the bar, especially its younger members, assuring them that the science of pleading, as perfected by the wisdom of centuries, can never be improved, nor simplified by hasty legislation. Its improvements must come of great minds, whose lives have been devoted to it. Reverse the judgment and remand the cause.